IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRANK S. GUTTA JR., an individual,                No. 3:22-cv-01145-HZ

          Plaintiff,                         OPINION & ORDER

    v.

SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC.,

          Defendant.

Frank S. Gutta Jr.
4245 SE Main St.
Portland, OR 97215

    *Pro se*

Alina Salo
Mark Crabtree
Scott William Oborne
Jackson Lewis P.C.
200 SW Market St., Ste. 540
Portland, Oregon 97201

    Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Frank S. Gutta Jr. brings suit against Sedgwick Claims Management Services, Inc., alleging wrongful termination, breach of contract, fraud, negligence, and negligent infliction of emotional distress. Defendant moves to dismiss all claims for failure to state a claim. For the following reasons, the Court grants Defendant's motion in part and denies it in part.

## BACKGROUND

Plaintiff Frank S. Gutta Jr. is the sole proprietor of Frank Gutta IT_Solutions. Am. Compl. 1, ECF 15. In this capacity, he provided software services to ADIN Healthcare, LLC, later known as Fast360 LLC ("ADIN/Fast360"), a subsidiary of Defendant Sedgwick. *Id.* ¶ 5. He served in this role for 13 years. *Id.* ¶ 38. ADIN/Fast360 manages medical care for patients. *Id.* Plaintiff alleges that he was the lead programmer but was "not organized under, nor supervised by the Corporate IT group." *Id.* ¶ 6. He states that due to this unique position, he could offer "different or better solutions" and "push[] back on Corporate IT when they made incorrect statements[.]" *Id.* "This created tension between the Plaintiff . . . and Corporate IT[.]" *Id.*

According to Plaintiff, the performance of Defendant's IT department was deficient in several respects: "not performing duties regularly, not supporting their troubled software, hanging up ADIN/Fast360 without support for months at a time, blocking important fixes/updates, breaking the law (negligence per se), retaliatory behavior, not giving ADIN / Fast360 timely information, not sharing ADIN/Fast360 critical resources, and withholding a critically needed utility program." *Id.* ¶ 7. Plaintiff provides examples of incidents of mismanagement by ADIN/Fast360's IT department. *Id.* ¶ 22.

At some point, Plaintiff fixed a technological problem that a member of the IT department had been unable to fix. *Id.* ¶ 26. This employee later made a "demand of the

ADIN/Fast360 business software development cycle," and Plaintiff declined. *Id.* ¶ 28. The employee then locked Plaintiff out of all accounts for a month, putting the business at risk. *Id.* ¶ 30. Plaintiff lost a month's income, which was over $5,000. *Id.* ¶ 32. He reported the lockout to the Chief Technology Officer and a complaint reached Human Resources, but no action was taken. *Id.* ¶ 35. As a result of this incident, Plaintiff feared retaliatory attacks at work. *Id.* ¶ 49. His health declined. *Id.* ¶ 50. He "started experiencing panic attacks, loss of sleep, and tremors on a regular basis." *Id.* ¶ 53. He showed 14 symptoms of PTSD. *Id.* His relationships and reputation suffered. *Id.* ¶ 54.

Beginning in January 2020 and lasting until Plaintiff was terminated in June 2020, ADIN/Fast360 began imposing "deadlines and requirements" on Plaintiff "on a daily basis." *Id.* ¶ 39.

Plaintiff had "a written agreement with ADIN/Fast 360 to provide all phases of a system upgrade," and the last phase of the upgrade required him "to integrate automated billing and Fee Schedules into the ADIN/Fast360 business applications." *Id.* ¶ 47. The company never fully delivered the fee schedules. *Id.* ¶ 48. As a result, he could not complete the agreement. *Id.* ¶ 67.

In February 2020, a data breach occurred at ADIN/Fast360. *Id.* ¶ 12. This breach "left critical data missing from the ADIN/Fast360 code vault." *Id.* "The code vault is located on the network and is administered by Corporate IT." *Id.* ¶ 13. A code vault is "a security software application designed specifically to protect and store source code and other digital data." *Id.*

Plaintiff promptly reported the data breach to the manager of the IT department. *Id.* ¶ 14. The next day, a tech reviewed the breach with Plaintiff. *Id.* The missing files were found in the wrong place in the source vault. *Id.* The IT manager lied to Plaintiff about writing a report on the incident and investigating it further. *Id.* ¶ 15. Plaintiff did not discover the lie until he was

terminated after escalating his report. *Id.* The IT manager subsequently made other false statements related to the breach. *Id.* ¶ 16. The breach was not investigated. *Id.* Plaintiff alerted the next level of management. *Id.* ¶ 38. He was immediately terminated. *Id.* Plaintiff's final invoice was not paid. *Id.* ¶ 22.

At the same time the data breach occurred, the same IT manager made false statements about "a critical system integration project." *Id.* ¶ 42. The manager stated that Sedgwick's most recent API integration technology was inferior, when in fact it was newer and better. *Id.* ¶ 46. The manager "pushed an old data structure and old technology for ADIN/Fast360's integration." *Id.* This caused "damage to ADIN/Fast360 business[.]" *Id.* It also damaged "Plaintiff's business reputation, future prospects, and the Plaintiff's standing within the organization." *Id.* During this time, the IT director also made "numerous" false statements about "the integration API," "server resources," "job duties," "the Plaintiff," "investigating a data breach," "details of the data breach," and "to cover up the data breach." *Id.* ¶ 44.

Plaintiff filed his complaint in state court on June 10, 2022. Notice of Removal Ex. 1, ECF 1. His original complaint alleged negligence, negligent infliction of emotional distress ("NIED") and fraud. *Id.* Defendant removed to federal court based on diversity of citizenship. Notice of Removal at 2. Defendant moved to dismiss the complaint for failure to state a claim on August 12, 2022, Def. Am. Mot. to Dismiss, ECF 7. On August 30, 2022, Plaintiff moved for an extension of time to respond, moved to amend his complaint, and filed an opposition to Defendant's motion to dismiss. ECF 10-12. The Court granted leave to amend and denied the motion to dismiss as moot. Order, ECF 14. Plaintiff filed his amended complaint on October 4, 2022, adding new claims for wrongful termination and breach of contract. Am. Compl.

4 – OPINION & ORDER

Defendant now renews its motion to dismiss. Def. Mot to Dismiss Plaintiff's Second Amended

Complaint ("SAC"), ECF 16.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the

sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in

the complaint as true and construe them in the light most favorable to the non-moving party.

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under

Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief"

with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations

must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote

omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-

pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.*

at 679.

Courts must liberally construe pro se pleadings. *Wolfe v. Strankman*, 392 F.3d 358, 362

(9th Cir. 2004). Additionally, a court cannot dismiss a pro se complaint without first explaining

to the plaintiff the deficiencies of the complaint and providing an opportunity to amend. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Dismissal of a pro se complaint without leave to amend is proper only if it is clear that the deficiencies of the complaint could not be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

## DISCUSSION

The Court concludes that Plaintiff has stated a claim for breach of contract, but fails to state a claim for wrongful termination, fraud, negligence, or NIED. Thus, those four claims will be dismissed, while Plaintiff's breach of contract claim can proceed.

## I.      Governing Law

Oregon substantive law governs Plaintiff's claims for breach of contract, fraud, negligence, and NIED. *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938) (federal court sitting in diversity applies the substantive law of the forum state). However, federal law governs Plaintiff's claim for wrongful termination because his claim arises under the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A. Am. Compl. ¶¶ 1, 38, 61-63.

## II.     Statute of Limitations

Defendant argues that Plaintiff's claims for fraud, negligence, and NIED are barred by Oregon's two-year statute of limitations. Def. Am. Mot. to Dismiss 5-6; Def. Mot. to Dismiss SAC 2 (incorporating prior arguments). Claims "for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years[.]" Or. Rev. Stat. ("O.R.S.") § 12.110(1); *Baker v. Kennedy*, 317 Or. 372, 375, 856 P.2d 314 (1993) (O.R.S. 12.110(1) applies to actions for personal injury); *Allen v. Lawrence*, 137 Or. App. 181, 190, 903 P.2d 919 (1995) (O.R.S. 12.110(1) applies to actions for fraudulent misrepresentation). Plaintiff was terminated on June 10, 2020. Am. Compl. ¶ 58. He first filed

suit on June 10, 2022. Notice of Removal Ex. 1. He alleges that one element of his claims for fraud, negligence, and NIED came into existence on June 10, 2022, thus bringing them within the statute of limitations. Am. Compl. ¶ 58.

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). Here, while Defendant has plausibly argued that the statute of limitations bars Plaintiff's claims for fraud, negligence, and NIED, the running of the statute is not apparent on the face of the complaint. The Court declines to dismiss Plaintiff's complaint on these grounds. The Court now evaluates each of Plaintiff's claims to determine whether he has stated a claim for relief.

### III.    Claims for Relief

####      A.    Wrongful Termination

Plaintiff's first claim alleges wrongful termination under the whistleblower retaliation provision of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A. Am. Compl. ¶¶ 1, 38, 61-63. This statute provides whistleblower protection for employees of covered publicly traded companies who report certain types of unlawful conduct. 18 U.S.C. § 1514A(a). Plaintiff alleges that he told Defendant's management about a data breach and was terminated for doing so. Am. Compl. ¶ 38. Reviewing the statute shows that Plaintiff's claim falls short in several ways. The Court reviews each in turn.

First, SOX only covers certain publicly traded companies. To be covered under SOX, a company must either have "a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*)," or it must be "required to file reports under section

15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d)) including any subsidiary or

affiliate whose financial information is included in the consolidated financial statements of such

company[.]" 18 U.S.C. § 1514A(a). Plaintiff has not alleged facts tending to show that

Defendant is covered by SOX.

Second, to file a lawsuit under SOX's whistleblower provision, an employee must first

file a complaint with the Secretary of Labor. 18 U.S.C. § 1514A(b)(1)(A). Then, "if the

Secretary has not issued a final decision within 180 days of the filing of the complaint and there

is no showing that such delay is due to the bad faith of the claimant," the employee may file a

lawsuit in district court. 18 U.S.C. § 1514A(b)(1)(B). Plaintiff has not alleged that he filed a

complaint with the Secretary of Labor or that the Secretary of Labor failed to issue a decision

within 180 days. Thus, he has not shown that he is entitled to file suit.

Third, the employee must reasonably believe that the conduct reported "constitutes a

violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and

Exchange Commission, or any provision of Federal law relating to fraud against shareholders[.]"

18 U.S.C. § 1514A(a)(1). The four enumerated statutes cover, respectively, mail fraud (section

1341), wire fraud (section 1343), bank fraud (section 1344), and securities fraud (section 1348).

Plaintiff has not alleged facts tending to show that he reasonably believed the conduct he

reported constituted a violation of one of the statutes or rules described at 18 U.S.C. §

1514A(a)(1). He alleges that Defendant was negligent in safeguarding its networks, leading to a

major hack and data breach, which Defendant then covered up. Am. Compl. ¶¶ 12-16. Plaintiff

alleges that someone inside the company carried out the hack. *Id.* ¶ 18. He alleges this was a

violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. *Id.* ¶ 12. These

allegations, even construed liberally, do not fall within the conduct the statute covers. Plaintiff's

complaint suggests he is arguing that these actions violated a federal law related to fraud against shareholders. *Id.* ¶ 38. However, his complaint fails to describe how shareholders were defrauded.

Fourth, an individual bringing a whistleblower claim under SOX must be an employee of the defendant company. Defendant focuses its motion on the lack of facts tending to show that Plaintiff was in an employment relationship with Sedgwick under Oregon law. Mot. to Dismiss SAC 5-6. Plaintiff counters that he qualifies as an employee under Oregon common law or the IRS's 20-factor test. Pl. Opp. ¶¶ 4-7.[1] Neither party addresses the fact that Plaintiff's claim arises under SOX and not Oregon law. The Court first determines the proper employment test to apply.

Relevant regulations for SOX provide that "[e]mployee means an individual presently or formerly working for a covered person, an individual applying to work for a covered person, or an individual whose employment could be affected by a covered person." 29 C.F.R. § 1980.101(g). The Supreme Court has held that when a federal statute does not "helpfully define" the term "employee," courts should infer that Congress intended to refer to "the conventional master-servant relationship as understood by common-law agency doctrine" unless the statute indicates otherwise. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992) (internal quotations omitted).

The federal common-law agency test centers on "the extent of control that one may exercise over the details of the work of the other." *U.S. Equal Emp. Opportunity Comm'n v.*

---

[1] The IRS no longer uses the 20-factor test, instead focusing on three broad areas: behavioral control, financial control, and the type of relationship. *Independent Contractor (Self-Employed) or Employee?*, https://www.irs.gov/businesses/small-businesses-self-employed/independent-contractor-self-employed-or-employee (last accessed November 10, 2022).

*Glob. Horizons, Inc.*, 915 F.3d 631, 638 (9th Cir. 2019) (internal quotations omitted). Courts are

to consider the following non-exhaustive list of factors:

> the skill required; the source of the instrumentalities and tools; the location of the
> work; the duration of the relationship between the parties; whether the hiring party
> has the right to assign additional projects to the hired party; the extent of the hired
> party's discretion over when and how long to work; the method of payment; the
> hired party's role in hiring and paying assistants; whether the work is part of the
> regular business of the hiring party; whether the hiring party is in business; the
> provision of employee benefits; and the tax treatment of the hired party.

*Id.* (internal quotations omitted).

Plaintiff alleges that his "status as a contract freelancer was intrinsically transformed to

an employee status, under Oregon law using the 'right to control' test: 'employment' status is

based on 'right to control' which was no longer present in the relationship, with deadlines and

requirements being dictated to the Plaintiff on a daily basis." Am. Compl. ¶ 39. In briefing,

Plaintiff further alleges that he was required to attend daily meetings and was directed to use

outdated software. Pl. Opp. ¶ 4.[2] He also alleges that he "worked with the company every single

weekday and was respondent to a call center with a high demand of up-time." *Id.* ¶ 6. Plaintiff

alleges that he worked for Defendant for 13 years. Am. Compl. ¶ 5. While these allegations do

suggest that Defendant exercised some level of control over Plaintiff, they do not address most of

the factors listed above. Plaintiff has failed to allege sufficient facts to establish an employment

relationship under the federal common law agency test. As explained above, Plaintiff's claim

under SOX is also deficient for other reasons. Plaintiff has failed to state a claim for wrongful

termination under the Sarbanes-Oxley Act.

---

[2] Defendant argues that the Court may not look beyond the complaint in evaluating the viability
of Plaintiff's claims. Def. Reply 1-2, ECF 18 (citing *Schneider v. California Dep't of Corr.*, 151
F.3d 1194, 1197 n.1 (9th Cir. 1998)). Defendant is correct. However, because Plaintiff is *pro se*
and the Court is granting leave to amend, the Court highlights pertinent facts that Plaintiff raises
in his opposition brief. This does not affect the outcome here.

B.      Fraud

Plaintiff's second claim alleges common law fraud. Am. Compl. ¶¶ 64-66. Under Oregon law, fraud has the following elements: "[1] the defendant made a material misrepresentation that was false; [2] the defendant did so knowing that the representation was false; [3] the defendant intended the plaintiff to rely on the misrepresentation; [4] the plaintiff justifiably relied on the misrepresentation; and [5] the plaintiff was damaged as a result of that reliance." *Strawn v. Farmers Ins. Co. of Oregon*, 350 Or. 336, 352, 258 P.3d 1199, *adhered to on reconsideration*, 350 Or. 521, 256 P.3d 100 (2011).

Plaintiff alleges that an IT manager at the company made false statements "on a critical system integration project." Am. Compl. ¶ 42. He alleges that this manager disparaged the most recent API technology, "stated directly to the Plaintiff and to two other ADIN/Fast360 business associates that his business line wanted to take over our business and customers," and implemented the newer technology elsewhere but then "pushed" an inferior technology on ADIN/Fast360, "causing damage to ADIN/Fast360." *Id.* ¶ 46. Plaintiff alleges that this was "detrimental to the Plaintiff's business reputation, future prospects, and the Plaintiff's standing within the organization." *Id.* Plaintiff also alleges that the director of IT made "numerous" false statements about "the integration API," "server resources," "job duties," "the Plaintiff," "investigating a data breach," "details of the data breach," and "to cover up the data breach." *Id.* ¶ 44.

Construing these allegations liberally, they might cover the first two elements of fraud. They do not show an intent to induce Plaintiff's reliance or that Plaintiff justifiably relied to his detriment. First, as Defendant points out, if Plaintiff was directed to use the inferior technology, he could not rely on the statements about it because there was no element of choice. Def. Reply

3-4. Second, the harm Plaintiff alleges he himself suffered (rather than ADIN/Fast360) was not due to his reliance on the statements. It was the byproduct of a dishonest business decision by the IT manager that harmed the company. *See* Def. Reply 4. In addition, although Plaintiff alleges that the IT director made false statements about other subjects, Am. Compl. ¶ 44, he does not describe the content of the statements, why they were false, or how he relied on them to his detriment. *See* Fed. R. Civ. P. 9(b) (When alleging fraud, "a party must state with particularity the circumstances constituting fraud[.]"). Plaintiff has failed to state a claim for fraud.

C.      Breach of Contract

Plaintiff's third claim is for breach of contract, centering on Defendant's failure to deliver certain fee schedules. Am. Compl. ¶¶ 47-48, 67-68. "To state a claim for breach of contract, plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach[,] and defendant's breach resulting in damage to plaintiff." *Moyer v. Columbia State Bank*, 316 Or. App. 393, 402, 505 P.3d 26 (2021) (internal quotations omitted), *review denied*, 369 Or. 705, 509 P.3d 116 (2022).  "A contract is most commonly formed by an offer, an acceptance of that offer, and an exchange of consideration." *Id.* at 403 (internal quotations omitted). "A plaintiff must plead consideration." *Id.* "A claim will survive a motion to dismiss if the complaint contains even vague allegations of all material facts." *Id.* (internal quotations omitted).

Defendant asserts that Plaintiff fails to allege the existence of a contract or how the delayed fee schedules harmed him. Def. Mot. to Dismiss SAC 6. The Court disagrees. Plaintiff alleges the existence of a written agreement between himself and ADIN/Fast360. Am. Compl. ¶ 47. He alleges that he was "to provide all phases of a system upgrade." *Id.* ¶¶ 47, 67. He alleges that the terms of the agreement required him to integrate fee schedules into business applications.

*Id.* ¶ 47. He alleges that this term could not be fulfilled because Defendant never fully delivered the fee schedules. *Id.* ¶¶ 47, 67. He alleges that he "was honoring the contractual agreement to finish all phases of the system upgrade[.]" *Id.* ¶ 67. He alleges that he suffered economic damages because the contract could not be completed. *Id.* Under the low pleading standard, the Court finds that Plaintiff has stated a claim for breach of contract.

> D.      Negligence

Plaintiff's fourth claim is for negligence. Am. Compl. ¶¶ 12-37, 69. His claim is primarily grounded in Defendant's actions in responding to a data breach at the company. *Id.* ¶ 12. Defendant alleges that he reported the breach to management and that management's follow-up was inadequate. *Id.* ¶ 14. Plaintiff alleges several respects in which the company's IT support was negligent in responding to technological problems. *Id.* ¶ 22. Plaintiff also alleges negligence per se for a violation of the CFAA. *Id.* ¶ 16. He alleges that "Corporate IT was negligent by terminating the Plaintiff, and more so, with zero succession planning." *Id.* ¶ 21.

> Under Oregon law, a complaint for negligence
>
> must allege facts from which a factfinder could determine (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Stewart v. Kids Inc. of Dallas, OR*, 245 Or. App. 267, 274-75, 261 P.3d 1272 (2011) (internal quotations omitted).

Defendant asserts that Plaintiff lacks standing on his negligence claims because Defendant did not owe him a duty. Def. Mot. to Dismiss SAC 7; Def. Am. Mot. to Dismiss 6-7. Oregon law "has abandoned . . . the concept of common-law duty in the absence of a special

13 – OPINION & ORDER

relationship." *Son v. Ashland Cmty. Healthcare Servs.*, 239 Or. App. 495, 506, 244 P.3d 835

(2010). However, Defendant's argument that Plaintiff has no basis for a claim still has force. The

amended complaint does not meet elements (2) and (5) of a negligence claim. Plaintiff's interest

in a well-managed, functional IT department is not one that is protected by a negligence action.

Plaintiff is not within the class of persons that made Defendant's conduct negligent. As

Plaintiff's complaint repeatedly states, the data breach and other technological failings of

Defendant's IT department put customer data and services to customers at risk and harmed

ADIN/Fast360. Am. Compl. ¶¶ 7, 9, 12, 20-23, 46, 48, 50. Negative impacts on Plaintiff's work

experience or business relationships as a result of poor management by Defendant are not the

type of harm that made Defendant's conduct negligent. Rather, they are collateral consequences

of that conduct. Plaintiff has failed to state a claim for negligence.

 Plaintiff repeatedly alleges violations of the law as negligence *per se.* Am. Compl. ¶¶ 7,

16, 22, 24. The violation of a statute does not on its own constitute negligence *per se*. The

doctrine refers to "a negligence claim in which the standard of care is expressed by a statute or

rule." *Deckard v. Bunch*, 358 Or. 754, 761 n.6, 370 P.3d 478 (2016) (internal quotations

omitted). "When a negligence claim otherwise exists, and a statute or rule defines the standard of

care expected of a reasonably prudent person under the circumstances, a violation of that statute

or rule establishes a presumption of negligence." *Id.* "Once a violation is proven, the burden

shifts to the violator to prove that he or she acted reasonably under the circumstances." *Id.* The

plaintiff must still prove the other elements of the negligence claim. *Id.*

 Plaintiff's allegations of negligence *per se* suffer from the same shortcomings as his other

negligence allegations. He alleges that "[t]he tech and Corporate IT manager are negligent per se

for violating the conspiracy section of CFAA as per 18 USC§ 1030 (b) 'Whoever conspires to

14 – OPINION & ORDER

commit or attempts to commit an offense under subsection (a) shall be punished as provided in subsection (c) of this section.'" Am. Compl. ¶ 16. The Court need not decide whether the CFAA expresses the standard of care here because Plaintiff has failed to show that he is within the class of persons the statute was intended to protect. The Court has no evidence and no reason to believe that the CFAA was intended to protect employees or contractors of companies from the collateral consequences of other employees' unauthorized computer access that harmed the company. Plaintiff fails to state a claim for negligence based on violations of the CFAA.

### E.   Negligent Infliction of Emotional Distress

Plaintiff's fifth claim is for negligent infliction of emotional distress ("NIED"). Am. Compl. ¶¶ 49-57, 70-72. Recovery of damages for negligently inflicted emotional distress is possible under several theories recognized in Oregon. *Philibert v. Kluser*, 360 Or. 698, 702-03, 385 P.3d 1038 (2016). As with a traditional negligence claim, the plaintiff must demonstrate that the defendant was negligent with respect to the plaintiff. *See Norwest, By & Through Crain v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 558-59, 652 P.2d 318 (1982).

Plaintiff's NIED claim fails for similar reasons as his negligence claim. He alleges that an employee illegally locked him out of all accounts in violation of the CFAA, that Plaintiff reported this action, and that HR did not address the issue, which made Plaintiff's work situation unpleasant because he feared that Defendant's employees would continue to attack the company's systems in a similar manner. Am. Compl. ¶¶ 30, 35, 49. He alleges that his "health declined and never recovered" as a result. *Id.* ¶ 50. He alleges that he "started experiencing panic attacks, loss of sleep, and tremors on a regular basis" and developed "14 different symptoms of PTSD." *Id.* ¶ 53. Plaintiff's allegations do not show that Defendant was negligent with respect to him. Rather, he alleges that Defendant's poor oversight of its IT department created a risk of

harm to the company's systems, which made his job difficult and stressful because he had to be alert for bad acts by Defendant's employees. Plaintiff has failed to state a claim for NIED.

## IV.     Leave to Amend

Once the period for amending pleadings as a matter of course has elapsed, "a party may amend its pleading only with the opposing party's written consent or with the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* However, the court need not grant leave to amend where the amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) (internal quotation omitted). Amendment is futile "only if no set of facts can be proved . . . that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

While leave should ordinarily be freely given, the "[t]he district court's discretion to deny leave to amend is particularly broad where a plaintiff previously has amended the complaint." *World Wide Rush, LLC v. City of L.A.*, 606 F.3d 676, 690 (9th Cir. 2010); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (district court did not abuse discretion in denying leave to amend when the plaintiffs had "ample opportunity to properly plead a case and have failed to do so" and the plaintiffs previously failed to follow specific instructions from the court on how to amend the complaint).

Here, Plaintiff opposed Defendant's original motion to dismiss and explained why he believed he had stated a claim for negligence, NIED, and fraud. Pl. Opp., ECF 12. He also stated

that an amended complaint would establish the validity of his claims. *Id.* ¶ 12. The Court granted leave to amend without addressing the substance of the motion to dismiss. Order, ECF 14. Accordingly, because he is *pro se*, Plaintiff is granted leave to amend his complaint with respect to his wrongful termination, fraud, negligence, and NIED claims to the extent that he can allege facts that address the deficiencies the Court has outlined for each cause of action.

## CONCLUSION

Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [16] is GRANTED in part and DENIED in part. Plaintiff has leave to file an amended complaint within 21 days of the date of entry of this Opinion and Order.

IT IS SO ORDERED.


DATED:    January 1, 2023      .


_____
MARCO A. HERNÁNDEZ
United States District Judge