IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRANK S. GUTTA JR., an individual,                    No. 3:22-cv-01145-HZ

                Plaintiff,                    OPINION & ORDER

     v.

SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC.,

                Defendant.

Frank S. Gutta Jr.
4245 SE Main St.
Portland, OR 97215

      *Pro se*

Mark Crabtree
Scott William Oborne
Kevin Coles
Jackson Lewis P.C.
200 SW Market St., Ste. 540
Portland, Oregon 97201

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Frank S. Gutta Jr. filed a Third Amended Complaint ("TAC") in his suit against Sedgwick Claims Management Services, Inc., alleging breach of contract, fraud, negligence, and negligent infliction of emotional distress. Defendant moves to dismiss all but one of Plaintiff's claims for failure to state a claim. For the following reasons, the Court grants Defendant's motion in part and denies it in part.

## BACKGROUND

The facts alleged in the TAC are similar to those in the SAC, but the Court recites them here in the interest of completeness. Plaintiff Frank S. Gutta Jr. is the sole proprietor of Frank Gutta IT_Solutions. TAC 1, ECF 21.[1] In this capacity, he provided software services to ADIN Healthcare, LLC, later known as Fast360 LLC ("ADIN/Fast360"), a subsidiary of Defendant Sedgwick. *Id.* ¶ 2. He served in this role for 13 years. *Id.* ADIN/Fast360 manages medical care for patients. *Id.* ¶ 3. Plaintiff alleges that he was the lead programmer but was "not organized under, nor supervised by the Corporate IT group." *Id.* ¶ 4. He states that due to this unique position, he could offer "different or better solutions" and "push[] back on Corporate IT when they made incorrect statements[.]" *Id.* "This created tension between the Plaintiff . . . and Corporate IT[.]" *Id.*

Plaintiff alleges that he "entered into a business agreement with ADIN/Fast 360" that required Plaintiff to provide "business software solutions" and ADIN/Fast 360 to provide "all networking and security support." *Id.* ¶ 12. He alleges that this is standard in the industry. *Id.* He

---

[1] For the reasons discussed below, the plaintiff continues to be Mr. Gutta and not his business IT_Solutions, notwithstanding the caption of the TAC.

alleges that Defendant failed in its duties. *Id.* Plaintiff provides examples of these alleged

failures, including a three-month delay in implementing a fix to a software problem. *Id.* ¶ 40.

At some point, Plaintiff fixed a technological problem that a member of the IT

department, Shannon Dickey, had been unable to fix. *Id.* ¶ 26. Mr. Dickey later made a "demand

of the ADIN/Fast360 business software development cycle," and Plaintiff declined. *Id.* ¶ 28. Mr.

Dickey then locked Plaintiff out of all accounts for a month, putting ADIN/Fast360 at risk. *Id.* ¶

30. An operations manager sent emails asking Mr. Dickey to end the lockout. *Id.* ¶ 31. Plaintiff

lost a month's income, which was over $5,000. *Id.* ¶ 32. He reported the lockout to the Chief

Technology Officer and a complaint reached Human Resources, but no action was taken. *Id.* ¶

35.

Plaintiff had "a written agreement with ADIN/Fast 360 to provide all phases of a system

upgrade," and the last phase of the upgrade required him "to integrate automated billing and Fee

Schedules into the ADIN/Fast360 business applications." *Id.* ¶ 13. Plaintiff attempted to uphold

his end of the agreement. *Id.* ¶ 62. The company never fully delivered the fee schedules. *Id.* ¶ 14

As a result, Plaintiff could not complete the agreement. *Id.*

In February 2020, a data breach occurred at ADIN/Fast360. *Id.* ¶ 15. This breach "left

critical data missing from the ADIN/Fast360 code vault." *Id.* A code vault is "a security software

application designed specifically to protect and store source code and other digital data." *Id.* ¶ 16.

"The IT_Solutions code vault is stored on the network and is administered by Corporate IT." *Id.*

Plaintiff promptly reported the data breach to IT manager Jeff Plotts. *Id.* ¶ 17. The next

day, a tech, Ben Buening, reviewed the breach with Plaintiff. *Id.* The missing files were found in

the wrong place in the source vault. *Id.* Plaintiff asked Mr. Plotts to write up the incident and

investigate. *Id.* ¶ 18. Mr. Plotts lied to Plaintiff about writing a report on the incident and

investigating it further. *Id.* Plaintiff did not discover the lie until he was terminated after escalating his report. *Id.* Mr. Plotts later made other false statements related to the data breach. *Id.* ¶ 19. He claimed that the breach never happened. *Id.* The TAC alleges that the breach was instigated by someone at the company. *Id.* ¶ 20. Plaintiff alerted the next level of management about the beach. *Id.* ¶ 23. He was immediately terminated. *Id.* Plaintiff alleges a loss of over $8,000 due to lost productivity as a result of the breach. *Id.* ¶ 22.

At the same time the data breach occurred, the same IT manager, Mr. Plotts, made false statements about "a critical system integration project." *Id.* ¶ 43. Mr. Plotts told Plaintiff that Sedgwick's most recent API integration technology was "full of problems" and "should not be used." *Id.* ¶ 44(a). In fact, the technology was better. *Id.* ¶ 46(1). A project manager at Sedgwick, Courtney Swearingen, told Plaintiff that she had heard of "no problems" with the technology. *Id.* ¶ 46(2). Mr. Plotts successfully implemented the new technology, while Plaintiff used old technology at ADIN/Fast360 based on Mr. Plotts's statements. *Id.* ¶ 46(3). Mr. Plotts offered Plaintiff assistance with installation of a security certificate on the ADIN server that was necessary for the API. *Id.* ¶ 44(b). He then failed to provide the assistance. *Id.* He sent an email that was critical of Plaintiff. *Id.* Plaintiff alleges that he "could have pushed back, gone around Plotts, or gone over Plotts head" to complete the installation. *Id.* ¶ 46.

The TAC alleges that the security breaches "caused lasting damage to the Plaintiff's health, family, and income." *Id.* ¶ 49. Plaintiff alleges that he "underwent an ongoing, existential threat." *Id.* ¶ 52. He alleges that "[e]very minute of every day" he "had to worry and check for retaliatory attacks *from internal employees*[.]" *Id.* ¶ 53. He alleges that he "started experiencing panic attacks, loss of sleep, and tremors on a regular basis," and a total of "14 different symptoms of PTSD." *Id.* ¶ 56.

Plaintiff filed his complaint in state court on June 10, 2022. Notice of Removal Ex. 1, ECF 1. His original complaint alleged negligence, negligent infliction of emotional distress ("NIED"), and fraud. *Id.* Defendant removed to federal court based on diversity of citizenship. Notice of Removal at 2. Defendant then moved to dismiss the complaint for failure to state a claim. Def. Am. Mot. to Dismiss, ECF 7. On August 30, 2022, Plaintiff moved for an extension of time to respond, moved to amend his complaint, and filed an opposition to Defendant's motion to dismiss. ECF 10-12. The Court granted leave to amend and denied the motion to dismiss as moot. Order, ECF 14. Plaintiff filed his amended complaint on October 4, 2022, adding new claims for wrongful termination and breach of contract. Am. Compl., ECF 15. The Court granted Defendant's motion to dismiss with respect to all of Plaintiff's claims except for his breach of contract claim, and granted Plaintiff leave to amend his other claims. Op. & Ord., ECF 19. Plaintiff filed the TAC, and Defendant now renews its motion to dismiss. Def. Mot. to Dismiss TAC, ECF 24.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

Courts must liberally construe pro se pleadings. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Additionally, a court cannot dismiss a pro se complaint without first explaining to the plaintiff the deficiencies of the complaint and providing an opportunity to amend. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). Dismissal of a pro se complaint without leave to amend is proper only if it is clear that the deficiencies of the complaint could not be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

## DISCUSSION

Defendant moves to dismiss all of Plaintiff's claims except for his first claim, for breach of contract for failure to deliver certain fee schedules. Def. Mot. 2 n.2. The Court concludes that Plaintiff fails to state a claim for fraud, negligence, or NIED. Plaintiff does state a claim for breach of contract on his fourth claim for relief, which the Court evaluates as a pleading in the alternative. Accordingly, Defendant's motion is granted in part and denied in part. Plaintiff may proceed on his first claim and on his fourth claim as a breach of contract claim, while all other claims are dismissed without leave to amend.

I.      **Substitution of Plaintiffs**

The Court first addresses the caption of the TAC, which lists Frank Gutta IT_Solutions as the plaintiff, rather than Mr. Gutta as in previous versions of the complaint. Defendant objects to this change. Def. Mot. 2 n.1. Defendant relies on *HPD Advisors v. McNally Cap., LLC*, No. 8:18-CV-2941-T-36CPT, 2020 WL 1873571, at *4 (M.D. Fla. Apr. 15, 2020) ("HDP has not cited to, and the Court has not found, any law to support the proposition that Rule 15(c) permits a party to simply change the plaintiff with no motion or notice.").

The Ninth Circuit treats a substitution of plaintiffs under Federal Rule of Civil Procedure 15 in the same manner as substitution of defendants. *Raynor Bros. v. Am. Cyanimid Co.*, 695 F.2d 382, 384 (9th Cir. 1982). In *Raynor Brothers*, the Ninth Circuit held that the district court properly granted the plaintiff corporation's motion to substitute the partnership Raynor Brothers as the plaintiff because there was identity of interest between the entities such that there was no prejudice. *Id.* at 384-85. Other district courts in the Ninth Circuit have considered requests to substitute plaintiffs on a motion by a party. *E.g.*, *Bates v. Leprino Foods Co.*, No. 220CV00700AWIBAM, 2022 WL 3371584, at *1 (E.D. Cal. Aug. 16, 2022) (evaluating motion to amend complaint to substitute putative class representative in class action suit); *Muric-Dorado v. Las Vegas Metro. Police Dep't*, No. 2:18-CV-1184-JCM-EJY, 2021 WL 1762087, at *1 (D. Nev. May 3, 2021) (evaluating motion to substitute true names for Doe defendants).

At least one court in this district has also analyzed a motion to substitute parties under Federal Rule of Civil Procedure 21, which provides: "On motion or on its own, the court may at any time, on just terms, add or drop a party." *Margulies v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, No. 3:13-CV-00475-PK, 2014 WL 12918938, at *5 (D. Or. Dec. 23, 2014) (granting motion to substitute class representatives). The standard of analysis is similar to that under Rule

15(a). *In re: Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2016 WL 948874, at *2 (N.D. Cal. Mar. 14, 2016).

In a prior Order, this Court granted Plaintiff leave to amend his complaint "to the extent that he can allege facts that address the deficiencies the Court has outlined for each cause of action." Op. & Ord. 17. The Court did not grant Plaintiff leave to substitute parties; nor did Plaintiff move for leave to substitute his sole proprietorship as the plaintiff. The allegations in the TAC establish that Mr. Gutta continues to be the plaintiff. *E.g.*, TAC ¶ 7 ("IT_Solutions is a business, owned by the Plaintiff, which acted as a vendor to the Company…"). The change of caption alone in the TAC does not constitute a substitution of plaintiffs. The Court concludes that the plaintiff continues to be Mr. Gutta, not Frank Gutta IT_Solutions.[2]

## II.    Claims for Relief

### A.    Fraud

Plaintiff's second claim alleges common law fraud. TAC ¶¶ 66-68. Under Oregon law, fraud has the following elements: "[1] the defendant made a material misrepresentation that was false; [2] the defendant did so knowing that the representation was false; [3] the defendant intended the plaintiff to rely on the misrepresentation; [4] the plaintiff justifiably relied on the misrepresentation; and [5] the plaintiff was damaged as a result of that reliance." *Strawn v. Farmers Ins. Co. of Oregon*, 350 Or. 336, 352, 258 P.3d 1199, *adhered to on reconsideration*, 350 Or. 521, 256 P.3d 100 (2011).

Plaintiff's allegations in support of his fraud claim are fundamentally unchanged from those in his prior complaint. Plaintiff alleges that Mr. Plotts, an IT manager for ADIN/Fast360,

---

[2] The Court notes that a sole proprietorship has no legal existence apart from its owner. *Sharemaster v. U.S. Sec. & Exch. Comm'n*, 847 F.3d 1059, 1066 n.4 (9th Cir. 2017).

told him that a particular technology was inferior, and that Plaintiff relied on that statement in using a different technology to fulfill a job at ADIN/Fast360. TAC ¶¶ 43-44, 46. He alleges that the statement was false because a project manager told Plaintiff she had not heard of any problems with the software. *Id.* ¶ 46. Plaintiff alleges that this use of the inferior technology damaged his business's prospects and reputation and his standing with ADIN/Fast360. *Id.*

The Court previously held that Plaintiff failed to state a claim for fraud because he did not establish elements (3) through (5). Op. & Ord. 11-12. The TAC does not remedy this defect. Defendant renews its argument that Plaintiff could not rely on the statements because he was directed to use the particular technology. Def. Mot. 6. Anticipating this argument, Plaintiff states in his complaint that he "could have pushed back, gone around Plotts, or gone over Plotts head[.]" TAC ¶ 46. The Court agrees with Defendant. Plaintiff cannot establish reliance where he was following the directive of the company for which he was installing the software. The possibility that Plaintiff could have disobeyed this directive does not show that he relied on the representations by Mr. Plotts. Defendant also renews its argument that "any harm to Plaintiff's business relationship was merely a byproduct of harm to Plaintiff's client." Def. Mot. 6. The Court so held in its ruling on Defendant's prior motion to dismiss, Op. & Ord. 12, and nothing in the TAC changes the analysis. Because Plaintiff did not rely on Mr. Plotts's statements, he cannot show damage as a result of reliance. Plaintiff has failed to state a claim for fraud.

   B.    Negligence

The Court analyzes Plaintiff's third, fourth, and fifth claims for relief together. Plaintiff's third claim is styled as "negligence per se" based on violations of the Computer Fraud and Abuse Act ("CFAA") and the Health Insurance Portability and Accountability Act ("HIPAA"). TAC ¶¶ 69-70. His fourth claim is styled as "negligence/breach of contract 1" for failure to "provide

agreed upon security and networking administrative functions to Plaintiff's business." *Id.* ¶¶ 71-72. Plaintiff's fifth claim is for negligent infliction of emotional distress ("NIED") based on his conditions of employment. *Id.* ¶¶ 73-75.

> Under Oregon law, a complaint for negligence
>
> must allege facts from which a factfinder could determine (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Stewart v. Kids Inc. of Dallas, OR*, 245 Or. App. 267, 274-75, 261 P.3d 1272 (2011) (internal quotations omitted).

As the Court previously explained, the term "negligence *per se*" refers to "a negligence claim in which the standard of care is expressed by a statute or rule." *Deckard v. Bunch*, 358 Or. 754, 761 n.6, 370 P.3d 478 (2016) (internal quotations omitted). "When a negligence claim otherwise exists, and a statute or rule defines the standard of care expected of a reasonably prudent person under the circumstances, a violation of that statute or rule establishes a presumption of negligence." *Id.* "Once a violation is proven, the burden shifts to the violator to prove that he or she acted reasonably under the circumstances." *Id.* The plaintiff must still prove the other elements of the negligence claim. *Id.*

Recovery of damages for negligently inflicted emotional distress is possible under several theories recognized in Oregon. *Philibert v. Kluser*, 360 Or. 698, 702-03, 385 P.3d 1038 (2016). As with a traditional negligence claim, the plaintiff must demonstrate that the defendant was negligent with respect to the plaintiff. *See Norwest, By & Through Crain v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 558-59, 652 P.2d 318 (1982).

Defendant argues that Plaintiff fails to establish elements (2) through (5) of a negligence claim. Def. Mot. 7. The Court concludes that Plaintiff fails to show element (5) and declines to address the other elements. With respect to Plaintiff's fourth claim for relief, although Plaintiff alleges that Defendant had an obligation to provide him with a particular level of network security support, TAC ¶ 2, the obligation is based on an agreement between the parties. Defendant correctly asserts that Plaintiff cannot state a claim for negligence where the alleged duty only exists because of a contract between the parties. Def. Mot. 8 (citing *Clement v. Ecolab, Inc.*, 341 F. Supp. 3d 1205, 1215 (D. Or. 2018)). Poor management of Defendant's IT department resulting in breaches of Defendant's data or inefficient resolution of software bugs in Defendant's system are harms to Defendant. To the extent that Plaintiff's job became more difficult or unpleasant because of Defendant's poor business decisions, such collateral harm is not actionable in a negligence claim. As the Court previously stated, "Plaintiff's interest in a well-managed, functional IT department is not one that is protected by a negligence action. Plaintiff is not within the class of persons that made Defendant's conduct negligent." Op. & Ord. 14. Plaintiff's fourth claim fails to state a claim for negligence.

Plaintiff also fails to state a claim for negligence based on violations of the CFAA or HIPAA. With respect to HIPAA, Plaintiff has conceded that he is not within the class of persons who may sue for any HIPAA violations by Defendant. TAC ¶ 9. Plaintiff has no basis to sue Defendant for potential breaches of Defendant's clients' health information. The Court therefore turns to Plaintiff's allegations of a CFAA violation.

Under the CFAA, one who "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer" faces liability. 18 U.S.C. § 1030(a)(5)(A).

Plaintiff alleges that he used his business-owned computer to perform services for Defendant and that his business was legally protected from computer fraud. TAC ¶ 7. Plaintiff alleges that the February 2020 data breach was a CFAA violation but concedes it was outside the statute of limitations. *Id.* ¶ 15. He alleges that employees of Defendant conspired to commit a CFAA violation on June 10, 2020, within the statute of limitations, because that was the date Plaintiff was terminated for escalating his report of the data breach. *Id.* ¶¶ 15, 19, 23. Plaintiff alleges that another CFAA violation occurred when a tech at ADIN/Fast360 improperly locked Plaintiff out of relevant company accounts for a month. *Id.* ¶ 30.

Plaintiff's allegations fall short. As Defendant points out, Plaintiff does not allege that his own systems were breached. Def. Mot. 7. Rather, Plaintiff alleges that ADIN/Fast360's systems were breached and that he was locked out of ADIN/Fast360's systems. These allegations do not show that Plaintiff is within the class of persons who may bring suit under the CFAA. Plaintiff has not alleged any unauthorized access to his own computer or systems as required by the CFAA—or indeed, any access to his computer or systems at all. *See generally* 18 U.S.C. § 1030(a). The TAC does not allege any damage to Plaintiff's computer. Plaintiff's allegations fail to state a claim for negligence based on a statutory violation.

Finally, the Court concludes, as it did previously, that Plaintiff's NIED claim fails for similar reasons as for his standard negligence claim. *See* Op. & Ord. 15-16. Plaintiff's NIED claim arises from the same set of facts as his other negligence claims. TAC ¶¶ 73-74. Because Plaintiff has failed to adequately allege that Defendant was negligent with respect to him, he has failed to demonstrate that he can recover damages for negligently inflicted emotional distress. Plaintiff's various theories of negligence all fail to state a claim for relief.

C.    Claim Four in the Alternative: Breach of Contract

Plaintiff's fourth claim alleges negligence and breach of contract. TAC ¶¶ 38-42, 71-72.

The Court construes these as allegations in the alternative. *See* Fed. R. Civ. P. 8(d)(2); *Coleman*

*v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116, 1120 (E.D. Cal. 2003) ("Under Rule 8, plaintiff

need not use particular words to plead in the alternative as long as it can be reasonably inferred

that this is what [he was] doing.") (internal quotations omitted). Having concluded that the claim

fails as a negligence claim, the Court analyzes it as a breach of contract claim.

"To state a claim for breach of contract, plaintiff must allege the existence of a contract,

its relevant terms, plaintiff's full performance and lack of breach[,] and defendant's breach

resulting in damage to plaintiff." *Moyer v. Columbia State Bank*, 316 Or. App. 393, 402, 505

P.3d 26 (2021) (internal quotations omitted), *review denied*, 369 Or. 705, 509 P.3d 116 (2022).

"A contract is most commonly formed by an offer, an acceptance of that offer, and an exchange

of consideration." *Id.* at 403 (internal quotations omitted). "A plaintiff must plead consideration."

*Id.* "Consideration is some right, interest, profit or benefit or some forbearance, detriment, loss or

responsibility given, suffered or undertaken by the other." *Id.* at 405 (internal quotations

omitted). "A claim will survive a motion to dismiss if the complaint contains even vague

allegations of all material facts." *Id.* at 403 (internal quotations omitted).

The Court concludes that Plaintiff has stated a claim for breach of contract. Plaintiff

alleges that IT_Solutions and Defendant "entered into a business arrangement" in which

Defendant agreed "to provide all network administration and security." TAC ¶ 38. Plaintiff

provided computer programming services to Defendant. *Id.* ¶ 39. Plaintiff alleges that he

sometimes could not work on projects because Defendant failed to deliver the network

administration and security he needed. *Id.* He alleges that he provided "fast and effective results"

whenever he did not have to rely on Defendant's IT department. *Id.* He alleges that he faced unreasonable timelines because of the administration and security failures. *Id.* ¶ 41. He alleges that Defendant's lapses in IT services also caused outages and system malfunctions at ADIN/Fast360. *Id.* These allegations, construed liberally, show the existence of a contract and its relevant terms, Plaintiff's full performance and lack of breach, and Defendant's breach.

In terms of damages, Plaintiff alleges lost business income, such as "over $8,000 in losses in productivity and billable hours as a result of the failed security duties by the company and Corporate IT, between February 2020 and June 2020." *Id.* ¶ 22. Plaintiff also alleges that he suffered emotional injury. TAC ¶ 56. Finally, he seeks punitive damages. *Id.* ¶ 71. Under Oregon law, damages for emotional distress and punitive damages are unavailable in an action for breach of contract. *Farris v. U.S. Fid. & Guar. Co.*, 284 Or. 453, 455-56, 466, 587 P.2d 1015 (1978); *Schmelzer v. Wells Fargo Home Mortg.*, No. CV-10-1445-HZ, 2011 WL 5873058, at *5 (D. Or. Nov. 21, 2011). Because Plaintiff also alleges lost business income, his fourth claim for relief states a claim for breach of contract.

## III. Leave to Amend

Once the period for amending pleadings as a matter of course has elapsed, "a party may amend its pleading only with the opposing party's written consent or with the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* However, the court need not grant leave to amend where the amendment "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) (internal

quotation omitted). Amendment is futile "only if no set of facts can be proved . . . that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

While leave should ordinarily be freely given, the "[t]he district court's discretion to deny leave to amend is particularly broad where a plaintiff previously has amended the complaint." *World Wide Rush, LLC v. City of L.A.*, 606 F.3d 676, 690 (9th Cir. 2010); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (district court did not abuse discretion in denying leave to amend when the plaintiffs had "ample opportunity to properly plead a case and have failed to do so" and the plaintiffs previously failed to follow specific instructions from the court on how to amend the complaint).

The Court declines to grant Plaintiff further leave to amend his complaint. Plaintiff has had multiple opportunities to amend, most recently with the benefit of the Court's detailed analysis of each of his claims. *See* Op. & Ord. The TAC fails to remedy the defects in his fraud and negligence claims. Justice does not require further leave to amend.

## IV.    Attorney Fees

Defendant requests an award of attorney fees based on the time spent responding to multiple iterations of Plaintiff's complaint. Def. Mot. 9. Defendant cites no legal basis for its request for fees and no caselaw supporting an award of fees under similar circumstances. The Court declines to award fees.

//

//

//

//

## CONCLUSION

Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint [24] is GRANTED IN PART and DENIED IN PART. Plaintiff's second, third, and fifth claims for relief are dismissed. Plaintiff's fourth claim for relief is dismissed to the extent that it alleges negligence. Plaintiff may proceed on his first claim for relief for breach of contract and on his fourth claim for relief as a breach of contract claim.

IT IS SO ORDERED.


DATED: _____March 29, 2023_____.


_____
MARCO A. HERNÁNDEZ
United States District Judge