IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRANK S. GUTTA JR., an individual,                    No. 3:22-cv-01145-HZ

                    Plaintiff,                         OPINION & ORDER

       v.

SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC.,

                    Defendant.

Frank S. Gutta Jr.
4245 SE Main St.
Portland, OR 97215

       *Pro se*

Mark Crabtree
Scott William Oborne
Kevin Coles
Jackson Lewis P.C.
200 SW Market St., Ste. 540
Portland, Oregon 97201

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

Before the Court are the parties' cross-motions for summary judgment on Plaintiff's two claims for breach of contract. ECF 31, 37, 41. Defendant also moves to strike Plaintiff's evidence in support of his claim under Rule 37. ECF 49. This matter is suitable for decision without oral argument. For the following reasons, the Court grants Defendant's Motion to Strike and Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

## BACKGROUND

This case revolves around the former business relationship between Plaintiff and Defendant. Plaintiff Frank Gutta Jr., the sole proprietor of Frank Gutta IT_Solutions ("IT_Solutions"), formerly did consulting work for ADIN Healthcare, LLC, a subsidiary of Defendant Sedgwick. Third Am. Compl. ("TAC") ¶ 2, ECF 21; Answer ¶ 2, ECF 27. The precise nature of the consulting work is disputed. ADIN "provides scheduling services for healthcare providers and access to a national network of healthcare providers." Harper Decl. ¶ 3, ECF 32. Plaintiff alleges that ADIN later became known as Fast 360 LLC. TAC ¶ 2. Plaintiff was not organized under or supervised by Defendant's IT department. TAC ¶ 4; Answer ¶ 4.

Two claims remain in this case, both for breach of contract. First, Plaintiff alleges that he had "a written agreement with ADIN/Fast 360 to provide all phases of a system upgrade," and the last phase of the upgrade required him "to integrate automated billing and Fee Schedules into the ADIN/Fast360 business applications." TAC ¶ 13. Plaintiff tried to uphold his end of the agreement. *Id.* ¶ 62. The company never fully delivered the fee schedules. *Id.* ¶ 14 As a result, Plaintiff could not complete the agreement. *Id.* Second, Plaintiff alleges that he "entered into a business agreement with ADIN/Fast 360" that required Plaintiff to provide "business software

solutions" and ADIN/Fast 360 to provide "all networking and security support." *Id.* ¶ 12. He alleges that this is standard in the industry. *Id.* He alleges that Defendant failed in its duties. *Id.*

On December 7, 2010, Plaintiff emailed several individuals at ADIN a proposed upgrade plan for a software project. Crabtree Summ. J. Decl. Ex. 1 at 5, ECF 33; Gutta Decl. Ex. 25, ECF 42. Plaintiff submits copies of a few emails related to his requests for fee schedules in 2016 and 2017. Gutta Decl. Exs. 8-11.

The TAC enumerates various ways in which Defendant's IT department allegedly failed in its duties. Plaintiff focuses on two incidents in particular. First, Plaintiff alleges that one of Defendant's IT personnel improperly locked him out of all accounts for a month. TAC ¶ 30. He submits emails and other documents related to the lockout. Gutta Decl. Exs. 13-23. Second, Plaintiff alleges that a data breach occurred at the company in February 2020. TAC ¶ 15. He alleges that he reported the breach and was terminated immediately after he escalated his reports. *Id.* ¶¶ 17-20, 23. He submits emails, text messages, and other documents related to the alleged breach. Gutta Decl. Exs. 1, 2, 3, 12, 29.

On June 5, 2020, Joel Harper, Defendant's Vice President of IT Applications, asked other employees of Defendant if he could see a copy of any agreement with Plaintiff, and expressed concerns that Plaintiff was not responding to communications or attending meetings. Harper Decl. ¶¶ 1, 5, Ex. 1 (emails). On June 9, 2020, Harper emailed other members of the IT department, "Based on Frank's recent behavior and the small communications we do get from him, I feel it is time to cut his network access to all of Sedgwick." *Id.* ¶ 6, Ex. 2. The same day, Defendant terminated Plaintiff's network access. *Id.* ¶ 7. The next day, Defendant notified Plaintiff that it was terminating the parties' business relationship. *Id.*

Plaintiff filed his complaint in state court on June 10, 2022. Notice of Removal Ex. 1 at 4-13, ECF 1. His original complaint alleged negligence, negligent infliction of emotional distress ("NIED"), and fraud. *Id.* Defendant removed to federal court based on diversity of citizenship. Notice of Removal at 2. Defendant then moved to dismiss the complaint for failure to state a claim. Def. Am. Mot. to Dismiss, ECF 7. On August 30, 2022, Plaintiff moved for an extension of time to respond, moved to amend his complaint, and filed an opposition to Defendant's motion to dismiss. ECF 10-12. The Court granted leave to amend and denied the motion to dismiss as moot. Order, ECF 14. Plaintiff filed his amended complaint on October 4, 2022, adding new claims for wrongful termination under the Sarbanes-Oxley Act and breach of contract. Am. Compl., ECF 15. The Court granted Defendant's motion to dismiss with respect to all of Plaintiff's claims except for his breach of contract claim, and granted Plaintiff leave to amend his other claims. Op. & Ord., ECF 19. Plaintiff filed another amended complaint, the TAC, on January 20, 2023, adding a second claim for breach of contract. ECF 21. Defendant again moved to dismiss. ECF 24. The Court granted Defendant's motion to dismiss with respect to all of Plaintiff's claims except for the two claims for breach of contract, and declined to grant further leave to amend. Op. & Ord., ECF 26. Defendant then answered the TAC. ECF 27.

The Court held a Rule 16 conference on April 20, 2023. ECF 29. The discovery deadline was set for September 29, 2023, and the deadline to file dispositive motions was set for October 30. 2023. *Id.* On July 28, 2023, Defendant moved for summary judgment on the basis that Plaintiff had failed to prove the existence of a contract. Def. Mot. Summ. J., ECF 31. Defendant's Motion relied in part on Plaintiff's failure to timely answer certain requests for admissions, arguing that they were deemed admitted under Federal Rule of Civil Procedure 36(a)(3). *Id.* at 5-6. The Court issued a summary judgment advice notice to Plaintiff and

extended the deadline for him to respond to the motion. ECF 34, 35. Plaintiff filed an opposition to Defendant's Motion, and at the same time filed his First Motion for Summary Judgment. Pl. First Mot., ECF 37. Plaintiff's First Motion consisted solely of a brief.

After the parties notified the Court of a discovery dispute, the Court held a discovery conference on September 11, 2023. ECF 40. The Court ordered Defendant to amend certain interrogatories and set a deadline for Plaintiff to respond. The Court also granted Plaintiff relief from the requests for admissions deemed admitted and ordered him to respond to the requests. The Court delineated the extent to which Defendant was required to respond to Plaintiff's requests for production. The Court extended the discovery deadline to October 30, 2023. Finally, the Court directed the clerk to strike Plaintiff's opposition to Defendant's Motion for Summary Judgment so that Plaintiff could file a new opposition with supporting evidence.

On October 30, 2023, Plaintiff filed his Second Motion for Summary Judgment. Pl. Second Mot., ECF 41. Plaintiff also submitted a declaration under penalty of perjury attaching 25 exhibits. Gutta Decl., ECF 42. In addition, Plaintiff filed two documents titled Motions in Limine. One sought to preclude Defendant from making false statements about the alleged data breach. ECF 43. The other sought to preclude Defendant from asserting that Plaintiff performed IT networking, administration, and security support for Defendant. ECF 44. The Court issued a minute order stating that it would treat the Motions in Limine as briefs in support of Plaintiff's Motion for Summary Judgment. ECF 45. On November 2, 2023, Plaintiff filed a new opposition to Defendant's Motion for Summary Judgment and attached the same exhibits he had attached in support of his Second Motion. Pl. Resp., ECF 46. Defendant moves to strike Plaintiff's exhibits because they were not timely disclosed in discovery. ECF 49.

**STANDARDS**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[W]hen parties submit cross-motions for summary judgment, [e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249

F.3d 1132, 1136 (9th Cir. 2001) (internal quotations omitted). "In fulfilling its duty to review

each cross-motion separately, the court must review the evidence submitted in support of

each cross-motion." *Id.*

## DISCUSSION

The Court first concludes that Plaintiff cannot rely on the evidence he submitted in

support of his claims because he failed to timely disclose it to Defendant. The Court then

concludes that Plaintiff is not entitled to summary judgment on either of his claims and

Defendant is entitled to summary judgment on both of Plaintiff's claims.

## I.    Rule 37 Motion to Strike

### A.    Standard

Parties have a right to discovery on "any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

If a party learns that its response to an interrogatory, request for production, or request for

admission is incorrect or incomplete, it has a duty to correct or supplement that disclosure "in a

timely manner." Fed. R. Civ. P. 26(e)(1)(A).

> If a party fails to provide information or identify a witness as required by Rule
> 26(a) or (e), the party is not allowed to use that information or witness to supply
> evidence on a motion, at a hearing, or at a trial, unless the failure was substantially
> justified or is harmless.

Fed. R. Civ. P. 37(c)(1). Other sanctions may be imposed instead of or in addition to this

exclusionary sanction "on motion and after giving an opportunity to be heard." *Id.*

"Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed

evidence." *Merch. v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021). "[L]itigants can

escape the 'harshness' of exclusion only if they prove that the discovery violations were

substantially justified or harmless." *Id.* While the district court may impose a lesser sanction

instead, the party to be sanctioned must formally request a lesser sanction. *Id.* at 741. The district court is not required to consider lesser sanctions if the party to be sanctioned does not request such consideration. *Id.*

B.      Application

Defendant asserts that Plaintiff never produced any of the documents he submitted in support of his Second Motion during discovery. Def. Mot. to Strike 5. Defendant attaches evidence that it requested copies of a contract in discovery. Crabtree Mot. to Strike Decl. ¶¶ 3-4, Exs. 2-3, ECF 50 (emails between counsel and Plaintiff from June 26, 2023, regarding Defendant's request for copies of a contract); Coles Decl. ¶ 2, Ex. 1, ECF 52 (Defendant's September 28, 2023, requests for production requesting documents reflecting Defendant's contractual obligations). Plaintiff provides no response indicating that he timely produced the documents. Because Plaintiff submitted the documents attached to his declaration to prove the existence of a contract between Plaintiff and Defendant, breach of that contract, or damages from the breach, those documents needed to be disclosed. Plaintiff failed to disclose them prior to relying on them in support of his Second Motion for Summary Judgment. Thus, under Rule 37(c)(1), Plaintiff cannot rely on this evidence unless the failure to produce the documents was substantially justified or harmless. Plaintiff did not file a response to the Motion to Strike and has provided no basis for the Court to conclude that the failure to disclose was substantially justified or harmless. Nor did Plaintiff move for alternative sanctions. The Court need not consider alternative sanctions, and sees no basis to do so.

The record provides no basis for the Court to conclude that Plaintiff's failure to disclose was substantially justified or harmless. At the discovery conference, the Court instructed the parties to respond to each other's discovery requests on the terms laid out by the Court and

extended the discovery deadline to October 30, 2023. Thus, Plaintiff was on notice that he needed to respond to discovery requests, and he was aware of the discovery deadline. Defendant states that for the first time, Plaintiff responded to some of Defendant's discovery requests on November 20, 2023, "hours before this Motion to Strike" was filed. Def. Mot. to Strike 5 n.1. Defendant states that the responses "appear to be the same declaration and evidence that Plaintiff previously filed" in support of his Second Motion. *Id.* Plaintiff's discovery responses were untimely. Further, November 20 was the deadline for Defendant to file a reply in support of its Motion for Summary Judgment as well as the deadline for Defendant to respond to Plaintiff's Second Motion. Plaintiff's late disclosure was not harmless. In sum, there is no basis to deviate from the prescribed sanction in Rule 37(c)(1). The Court grants Defendant's Motion to Strike.

## II.    Cross-Motions for Summary Judgment

Both parties move for summary judgment on Plaintiff's claims, which are both for breach of contract. "To state a claim for breach of contract, plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach[,] and defendant's breach resulting in damage to plaintiff." *Moyer v. Columbia State Bank*, 316 Or. App. 393, 402, 505 P.3d 26 (2021) (internal quotations omitted), *review denied*, 369 Or. 705, 509 P.3d 116 (2022). "Whether a contract exists is a legal question." *Moyer v. Columbia State Bank*, 315 Or. App. 728, 737, 503 P.3d 472 (2021). "A contract is most commonly formed by an offer, an acceptance of that offer, and an exchange of consideration." *Moyer*, 316 Or. App. at 403 (internal quotations omitted). To show formation of a contract, a plaintiff must prove mutual assent. *Moyer*, 315 Or. App. at 737.

To prevail on his Motion for Summary Judgment, Plaintiff must prove all the elements of his claims even when the facts are viewed in the light most favorable to Defendant. To prevail on

its Motion for Summary Judgment, Defendant must prove that Plaintiff cannot establish one or more of the elements of his claims even if the facts are viewed in the light most favorable to Plaintiff. Under this standard, Plaintiff has not met his burden, and Defendant has met its burden.

      A.      Plaintiff's Motion for Summary Judgment

In evaluating Plaintiff's Motion, the Court considered Plaintiff's briefs in support of his First and Second Motions, his declaration, and the documents Plaintiff filed as motions in limine, as well as Defendant's argument and evidence in opposition. The Court concludes that Plaintiff is not entitled to summary judgment on either of his claims.

            i.      Fee Schedule Integration Contract

Plaintiff alleges that he had "a written agreement with ADIN/Fast 360 to provide all phases of a system upgrade," and the last phase of the upgrade required him "to integrate automated billing and Fee Schedules into the ADIN/Fast360 business applications." TAC ¶ 13. Plaintiff tried to uphold his end of the agreement. *Id.* ¶ 62. The company never fully delivered the fee schedules. *Id.* ¶ 14 As a result, Plaintiff could not complete the agreement. *Id.*

Plaintiff has not shown that such a contract existed. He argues that the contract is "the sum total of all emails and documentation pertaining to each deliverable, which span the whole development cycle. Each email is a signoff and part of the contract. The contract which the defense is seeking are in all emails exchanged between Plaintiff and ADIN." Pl. First Mot. 3. In his Second Motion, he relies on the evidence of invoices and emails about the fee schedule phase of an agreement with Defendant. Pl. Second Mot. 1-2. Plaintiff cites evidence that the Court has ruled cannot be considered under Rule 37. *Id.* He does, however, cite one document that is properly before the Court because it was disclosed to Plaintiff in discovery before it was filed with Defendant's Motion for Summary Judgment. Both parties rely on a December 7, 2010,

email Plaintiff sent to several individuals at ADIN. Crabtree Summ. J. Decl. Ex. 1 at 5; Gutta Decl. Ex. 25. In this email, Plaintiff lays out "initial plans/suggestions for phase II" of a software upgrade "and beyond." *Id.* Defendant correctly points out that the email is a recommendation, and there is no evidence that Defendant accepted any of Plaintiff's recommendations. Def. Resp. 5, ECF 51. It is not apparent that the proposal outlined in this email includes the integration of automated billing and fee schedules. The email does reference "medicare rates integrations" as part of phase V, but it is unclear whether that refers to the fee schedules that are the basis of Plaintiff's claim. Even if it did, nothing in the email appears to focus on that phase of the upgrade. Ultimately, the email reflects a proposal for how to carry out a software upgrade. It does not establish the existence of a contract or its terms.

Even if the Court were to consider the excluded evidence, Plaintiff would not be entitled to summary judgment because he did not submit copies of the emails and invoices he alleges formed the contract between himself and Defendant. Instead, he submitted screenshots of the search results on his computer for emails that he alleges constitute specifications making up the contracts, the search results for invoices containing relevant search terms such as "Fee Schedule," and the search results for invoices labeled "ADIN." Gutta Decl. Exs. 4-7. These search results are insufficient to establish that a contract existed. *See* Def. Resp. 4. Without seeing the content of those emails and invoices, a reasonably jury could not conclude that the fee schedule contract existed or what its relevant terms were.

Fundamentally, Plaintiff's Motion fails to recognize the distinction between a contract for services and the method by which such services are performed. Plaintiff asserts that the fee schedule contract was performed using the Agile method, "an iterative, incremental, user-collaborative software development methodology." Pl. First Mot. 3. He states that "[a]ll those

collaborative decisions between user and developer form the specification iteratively, rollout the project incrementally, and capture the specifications in ongoing emails and documentation." *Id.* Plaintiff's declaration states the same. Gutta Decl. ¶¶ 2-4. Assuming that Plaintiff performed services for Defendant using the Agile method, as reflected the by the proposal email Plaintiff sent in 2010, that does not tend to show the existence of a contract to perform those services; it only shows the manner in which the services were performed.

Even assuming a contract for integration of fee schedules existed, Plaintiff has also failed to show that Defendant breached it. As Defendant points out, Plaintiff testified that there was no agreed-upon timeline for the project. Def. Resp. 5-6 (citing Coles Decl. ¶ 4, Ex. 2 ("Gutta Dep.") 59:22-60:5). He testified that there was no fixed deadline for delivery of the fee schedules. *Id.* at 6 (citing Gutta Dep. 97:1-5). And he does not establish that Defendant ultimately failed to deliver the fee schedules as alleged in the TAC. Thus, he cannot prove breach.

The same result obtains even if the Court were to consider the evidence Plaintiff attached to his declaration. Plaintiff includes four emails related to delivery of fee schedules. Gutta Decl. Exs. 8-11. Exhibit 9 is a 2016 email from Brian Benefield at ADIN explaining to Plaintiff that "the States that you had an issue with were available online." Plaintiff annotated the email to state that the fee schedules were found elsewhere after the company owners failed to deliver them. This email tends to contradict Plaintiff's allegations that he could not complete fee schedule integration. In June 2017, Plaintiff emailed Jaysen Eldridge at Fast 360 about incorrect fee schedules for two states. *Id.* Exs. 8, 10. Eldridge responded, "So Georgia wasn't in the file they sent?" *Id.* Ex. 8. A week later, Plaintiff emailed "a list of older and currently active datasets." *Id.* Ex. 11. He asked if the Georgia fee schedule was "one that Brian can get off the internet?" *Id.* No further emails on this issue were submitted. Nor is there any other

documentation of the progression of Plaintiff's attempts to integrate the fee schedules. A jury

could not conclude from this evidence that, assuming a fee schedule integration contract existed,

Defendant breached it. There is no evidence that Defendant failed to deliver the fee schedules.

And there is no evidence that delay itself was a material breach. Plaintiff's own testimony at his

deposition indicates the opposite. In sum, Plaintiff is not entitled to summary judgment on his

claim for breach of a fee schedule integration contract. Because Plaintiff has failed to show the

existence of a contract, its terms, or breach, the Court will not address the elements of Plaintiff's

performance or damages.

                ii.       IT Networking and Security Contract

        Plaintiff alleges that he "entered into a business agreement with ADIN/Fast 360" that

required Plaintiff to provide "business software solutions" and ADIN/Fast 360 to provide "all

networking and security support." TAC ¶ 12. He alleges that this is standard in the industry. *Id.*

        Plaintiff has likewise failed to prove that such a contract existed. Plaintiff states in his

declaration that "[o]n or around Feb 3, 2023, Plaintiff had a conversation with the former

Sedgwick VP and original ADIN business owner with whom Plaintiff interviewed and built the

company for over a decade. Chris Moosher confirmed without equivocation that it was Plaintiff's

role to NOT do any IT networking administration or security at the company, and never did."

Gutta Decl. ¶ 43. This statement does not tend to establish the existence of a contract.

        There is no evidence of a contract between Plaintiff and Defendant for IT network

administration and security. Plaintiff asserts that it was "an industry standard" that he would not

be expected to provide IT networking and security services. Gutta Decl. ¶ 43. His October 6,

2023, deposition was consistent with this. Defense counsel asked Plaintiff to explain his

allegation that he "entered into a business agreement with ADIN/Fast360 at the beginning of the

relationship, whereby the plaintiff would provide business software solutions and the company would provide all networking and security support." Gutta Dep. 32:23-33:4. When asked what document that allegation referred to, Plaintiff stated, "All of them. It refers to every document. There was no exception to that. I never did any of their call center work, I never did any of their networking, I never did anything except the business software." *Id.* at 33:7-11. Plaintiff also testified, "Anytime I did a business solution and it required any kind of – anything in those – that realm, IT administration, networking, I would have to coordinate with whoever provided networking." *Id.* at 36:13-16.

Plaintiff stated that there were documents reflecting terms that Defendant would provide all networking and security support. *Id.* at 33:20-24. He conceded that he had not produced any such documents in discovery. *Id.* at 33:25-34:4. When asked if there were any documents defining the terms "all networking and security support," Plaintiff stated, "Those terms don't need to be defined. They're a standard in the industry." *Id.* at 34:5-11. Plaintiff suggested that counsel look at online job postings to find those industry standards. *Id.* at 34:12-24.

Although Plaintiff testified that there were documents establishing the terms of an agreement regarding network administration and security, he did not identify any such documents or attach them to his Motion. He submitted no evidence of the definitions of the relevant terms. Thus, even if the Court considered the evidence Plaintiff did not timely disclose, it would not affect the outcome. Plaintiff's own testimony and argument establishes that any agreement that Defendant would provide IT networking and security was not a separate contract but, in the light most favorable to him, a term of a contract in which Plaintiff was to provide software services to Defendant. *See also* Pl. First Mot. 1-2 (asserting that Defendant was required to provide Plaintiff with network security "by virtue of his contract position [in] which

duties were split such that the company handled IT networking administration and security"). Because Plaintiff has not established an underlying contract, he is not entitled to summary judgment on his claim for breach of an agreement to provide network administration and security.

Much of Plaintiff's briefing and evidence focuses on alleged breaches of an agreement to provide network administration and security. In particular, Plaintiff argues that he was locked out of his account for an extended period and that Defendant's IT department presided over a data breach that harmed his productivity. Pl. First Mot. 1-2, 5; Pl. Second Mot. 3-5; Gutta Decl. ¶¶ 18-36, Exs. 1-3, 12-23, 29; Pl. Mot. in Limine 1. Because Plaintiff has not proven the existence of an underlying contract for his own services or that such a contract was breached by the alleged failures of Defendant's IT department, he is not entitled to summary judgment on his claim. Finally, while Plaintiff's briefing repeatedly refers to negligence, fraud, and violations of the Computer Fraud and Abuse Act surrounding Defendant's IT department, the Court dismissed Plaintiff's claims related to those issues for failure to state a claim. In sum, Plaintiff is not entitled to summary judgment on either of his claims. The Court turns to Defendant's Motion for Summary Judgment.

B.    Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on both of Plaintiff's claims on the basis that Plaintiff did not produce a contract or establish its terms. Def. Mot. Summ. J. 6. Defendant's Motion as filed relied heavily on unanswered requests for admission that Defendant asserted should be deemed admitted. *Id.* at 5-6. Because the Court granted relief from those admissions and Defendant provides no evidence that Plaintiff subsequently failed to respond to the requests for admissions as ordered, the admissions are not a basis on which to grant Defendant's Motion.

However, Defendant is still entitled to summary judgment for the reasons discussed in addressing Plaintiff's Motion. Even viewing the record in the light most favorable to Plaintiff, there is no evidence that the alleged contracts existed. The record shows that Defendant repeatedly asked Plaintiff to produce a copy of an alleged contract or to clarify which document(s) formed the alleged contract. Plaintiff produced no documents. He asserts that the fee schedule contract existed based on a project proposal email he sent in 2010, but there is no evidence that a contract was formed based on that email. And he asserts that the network security and administration contract was formed by all of the emails and invoices between himself and employees of Defendant, but failed to produce these documents. Plaintiff has not created a genuine dispute of fact on this issue. Because he has failed to show the terms of either contract, Plaintiff has not established a genuine dispute about whether Defendant breached either contract. In opposing Defendant's Motion, Plaintiff relies on the same evidence on which he relied in support of his own Motion, which the Court has excluded under Rule 37. Pl. Resp., ECF 46. As discussed above, even if the Court did consider the evidence, it would not change the outcome. Even viewing the record in the light most favorable to Plaintiff, a reasonable jury could not find for Plaintiff on either of his breach of contract claims. Accordingly, Defendant is entitled to summary judgment on both of Plaintiff's claims.

//

//

//

//

//

//

## CONCLUSION

The Court GRANTS Defendant's Motion to Strike [49]. The Court GRANTS

Defendant's Motion for Summary Judgment [31]. The Court DENIES Plaintiff's Motions for

Summary Judgment [37], [41].

IT IS SO ORDERED.


DATED:   January 9, 2024        .




MARCO A. HERNANDEZ
United States District Judge